IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST MERCURY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:19-cv-02395 |
| v. | ) ) | Honorable Gary Feinerman |
| TRIPLE LOCATION LLC D/B/A CLUB O, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF FIRST MERCURY INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff First Mercury Insurance Company ("First Mercury"), by through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, for its Response in Opposition to Defendant's Motion for Summary Judgment (ECF No. 50) (the "Motion"), states as follows:

**I.      INTRODUCTION**

In this declaratory judgment action, First Mercury seeks a determination that it does not owe a duty under its policies to defend or indemnify Triple Location, LLC d/b/a Club O ("Club O") in connection with claims asserted against it in an action captioned *Emily Sears, Lina Posada, and Lucy Pinder v. SDI, LLC d/b/a Club O and Triple Location, LLC d/b/a Club O*, Case No. 1:18-cv-04808, filed in the United States District Court for the Northern District of Illinois (the "Underlying Action"). The Amended Complaint filed in the Underlying Action (the "Complaint") alleges Club O intentionally misappropriated images and likeness of the Underlying Plaintiffs, who are professional models, in violation of their right to privacy and publicity, by publishing their photos without consent on its website, Facebook page and Instagram page in order to market and promote its adult entertainment club. The Complaint

further alleges that Club O intentionally used, advertised, created, printed, and distributed the Underlying Plaintiffs' images to create the false impression with potential clientele that the Underlying Plaintiffs worked at or endorsed Club O, and took the foregoing actions with the intent to cause irreparable harm to the Underlying Plaintiffs. In this declaratory action, First Mercury asserts that coverage for the claims asserted against Club O in the Underlying Action is precluded by operation of several exclusions and/or provisions contained in the Policies including: (i) the "Field of Entertainment – Limitation of Coverage" Endorsement; (ii) exclusion a. (Knowing Violation of Rights of Another); (iii) exclusion b. (Material Published with Knowledge of Falsity); and (iv) exclusion p. (Recording and Distribution of Material or Information in Violation of Law). (ECF No. 9 at pp. 11-12).

In the Motion, Club O argues that it is entitled to summary judgment in this action because "a fair reading of the factual allegations the claims that make up the claims" asserted against it in the Underlying Action "sound in defamation" and therefore are covered, at least in part, by the policies issued by First Mercury to Club O (the "Policies"). (ECF No. 50 at pp. 2, 6). Club O fails in the Motion to cite a single decision from a court applying Illinois law which supports its position and, instead, relies entirely on an order issued by a Florida district court in a coverage action asserted against another "strip club" which also allegedly wrongfully used images of female models to promote their business.[1] The order from a Florida district court which applied Florida law to the dispute before it is not binding upon this Court. Moreover, given that the court in the Florida action addressed the application of only one of the **eight** policy exclusions upon which First Mercury has relied in disclaiming coverage to Club O for the claims asserted against it in the Underlying Action, such order has limited application, if any, to the issues in this action.

---

[1] Specifically, Club O cites in the Motion to a September 20, 2019 order denying summary judgment in *Aix Specialty Insurance Company v. Dginguerian*, Case No. 18-24099, 2019 WL 4573255 (U.S. District Ct., S.D. Florida). Club O did not provide this Court with a copy of this order; as such, a copy of the order in *Aix Specialty Insurance Company* is attached hereto as **Exhibit A.**

For the reasons set forth herein, Club O fails in the Motion to meet it burden of demonstrating that no genuine issue exists as to any material fact regarding whether the Policies afford coverage for the claims asserted against it in the Underlying Action. Accordingly, the Motion should be denied.

II. **RESPONSE TO STATEMENT OF MATERIAL FACTS[2]**

    A. **The Underlying Action**

Paragraph 3 of the Statement of Facts asserts that "[e]ach Plaintiff to the Underlying Suit has brought a claim for (1) violations of the Lanham Act, 15 U.S.C. § 1125(a) for false advertising and false endorsement; (2) violations of the Illinois Right of Publicity Act, 765 ILCS 1075/10, et seq., for violations of publicity and claims for false light; and (3) negligence on a basis of *respondeat superior*. (**Ex. 1** at 17, 20, 22, 25, 27, 28, 31, 34, 37, 39, 40, 43, 45, 48, 50). While these are the claims specifically captioned by the Underlying Plaintiffs, their claims also sound in defamation." First Mercury disputes that the claims asserted against Club O in the Underlying Action "sound in defamation" and states that the allegations in the Complaint unambiguously set forth the bases for the claims against Club O.

Paragraph 10 of the Statement of Facts asserts that "[t]he three policies read identically by their terms." First Mercury disputes that its policies contain identical terms and states that the coverage afforded under each of the Policies is subject to each policy's terms and conditions. Paragraph 11 of the Statement of Facts, asserts that "[u]nder each insurance policy, First Mercury "will pay those sums that the insured becomes legally obligated to pay as damages," and has the "duty to defend the insured against any 'suit' seeking those damages . . . because of 'personal and advertising injury'. . . to which [the] insurance applies." (**Ex. 3-5**, Coverage B, § I(1)(a)). Although First Mercury does not dispute that the Policies contain the

---

[2] First Mercury does not dispute the facts set forth at Paragraphs 1-2, 4-9, and 12-13 of the Motion's Statement of Material Facts (the "Statement of Facts").

3

quoted excerpts of policy language in Paragraph 11, First Mercury does dispute that the quoted policy language is a full or complete statement of the pertinent language of the Policies.

Paragraph 14 of the Statement of Facts asserts that "[r]ead together, coverage for personal and advertising injury includes damages arising from (1) oral or written publication that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (2) violation of privacy; (3) use of another's idea in the insured's advertisement; and (4) copyright, trade dress, or slogan infringement." First Mercury disputes that Paragraph 14 is a full or complete statement of the scope of coverage provided under the Policies for "personal and advertising injury" as such coverage is subject to certain exclusions, endorsements and other terms of the Policies which are not included within Paragraph 14. Paragraph 15 of the Statement of Facts asserts that "First Mercury claims that, notwithstanding the above coverage for personal and advertising injury, Underlying Plaintiffs' claims are nevertheless excluded from coverage because they are: (1) knowing violations of rights of another; (2) material published with knowledge of falsity; (3) material published prior to policy period; (4) infringement of copyright, patent, trademark, or trade secret; (5) electronic chatroom or bulletin boards; and (6) based upon statutory claims including the Langham Act and Illinois Right of Privacy Act." First Mercury disputes that Paragraph 15 accurately states the bases upon which it has denied coverage for the claims in the Underlying Action.

### III. STATEMENT OF ADDITIONAL MATERIAL FACTS

As its Statement of Additional Material Facts, First Mercury incorporates by reference, as if fully stated herein, the "Undisputed Facts" set forth in First Mercury's Memorandum in Support of its Motion for Judgment on the Pleadings. ECF No. 49 at pp. 2-7.

IV. **LEGAL STANDARD**

"Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 102 (1992). A motion for summary judgment is properly granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Brown Bros. Harriman Trust Co., LLC v. Bennett*, 357 Ill. App. 3d 399 (Ill. App. 1st Dist. 2005). "In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion." *Am. Safety Cas. Ins. Co. v. City of Waukegan*, 776 F. Supp. 2d 670, 694 (N.D. Ill. 2011). In summary judgment proceedings, the "burden of establishing that no genuine issue of material fact exists is on the moving party, and in determining whether the moving party has met that burden, the trial court must construe all pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent." *Sears v. Seneca Ins. Co.*, 254 Ill. App. 3d 686, 691 (Ill. App. Ct. 1st Dist. 1993).

Under Illinois law, which governs this diversity action, the construction of an insurance policy and its provisions is a question of law. *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill.2d 520, 529 (1995). "[A]n insurer has no duty to defend where it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Connecticut Indem., Co. v. DER Travel Service, Inc.*, 328 F.3d 347, 349 (7th Cir. 2003). Further, "[a]n insurer has the right to limit coverage on a policy, and where an insurer has done so, a court must give effect to the plain language of the limitation, absent a conflict with the law." *Phusion Projects, Inc. v. Selective Ins. Co.*, 2015 IL App (1st) 150172, ¶ 47 (internal citation omitted).

5

V. <u>ARGUMENT</u>

    A. **The Motion Fails to Address First Mercury's Assertion That Coverage Is Precluded By Operation Of The Policies' Field Of Entertainment – Limitation Of Coverage Endorsement.**

As its primary argument in support of its request for summary judgment, Club O goes to great lengths in the Motion to convince this Court that "a fair reading" of the claims asserted against it in the Underlying Action demonstrate that such claims are really other than as plead by the underlying claimants. Specifically, Club O asserts in the Motion that "a fair reading of the factual allegations that make up the claims present a claim for defamation." See Motion, ECF No. 50 at p. 6. Club O further asserts that "because the Underlying Plaintiffs allege reputational harm and other elements sufficient to state a cause of action for defamation, the Underlying Complaint is squarely within the ambit of the damages covered" by the [Policies] for "Personal and Advertising Injury" as therein defined. First Mercury has a duty to defend on these and all other claims brought within the same cause of action as a result." Motion, ECF No. 50 at p. 8.

However, in making these assertions, Club O noticeably fails to address First Mercury's claim that coverage for the claims asserted against Club O in the Underlying Action is precluded by operation of the "Field of Entertainment – Limitation of Coverage" Endorsement (the "Field of Entertainment Endorsement) contained in the Policies. ECF No. 9 at ¶ 39. For the following reasons, the Field of Entertainment Endorsement unambiguously operates to bar coverage for the claims asserted against Club O in the Underlying Action.

    **1. The Claims Asserted Against Club O in the Underlying Action Fall Squarely Within the Scope of the Exclusion Contained in The Policies' Field Of Entertainment – Limitation Of Coverage Endorsement**

The Field of Entertainment Endorsement contained in each of the Policies provides, in relevant part, as follows:

* * *

6

> **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2 Exclusions** AND **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2 Exclusions** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** . . . are amended and the following added:
>
> \* \* \*
>
> This insurance does not apply to . . . "personal and advertising injury" . . . actually or allegedly arising out of, related to, caused by or attributed to by any of the following, but only as each applies to the **"Business of The Insured in The Field of Entertainment."**
>
> > a. Invasion of the right to privacy;
> >
> > b. Infringement of copyright, whether under statutory or common law; libel, slander or other forms of defamation;
>
> \* \* \*
>
> The following is added to **SECTION V – DEFINITIONS:**
>
> > *"Business of The Insured in The Field of Entertainment"* means:
>
> \* \* \*
>
> > c. The ownership, licensing, operation maintenance or use of merchandising programs, advertising or publicity material or paraphernalia, characters or ideas, whether or not on premises of the insured or in possession of the insured at the time of the alleged offense or "occurrence";
>
> \* \* \*

ECF No. 9-2 at p. 56.

The Field of Entertainment Endorsement unambiguously precludes coverage for "personal and advertising injury" arising out of, related to, caused by or attributed to by, *inter alia*, "[i]nvasion of the right to privacy" or "[i]nfringement of copyright, whether under statutory or common law, libel, slander or other forms of defamation," but only as such acts apply to the "Business of The Insured in The Field of Entertainment." *See* ECF No. 9-2 at p. 56. The Field of Entertainment Endorsement defines "Business of The Insured in The Field of Entertainment", in pertinent part, to mean "[t]he ownership, licensing, operation, maintenance, or use of merchandising programs, advertising or publicity material or paraphernalia, characters or ideas, whether or not on premises of the insured or in possession of the insured at the time of the alleged offense or 'occurrence'." *See* ECF No. 9-2 at p. 56.

7

Club O's alleged misappropriation of the images and likeness of the Underlying Plaintiffs by publishing their photos without consent on its Facebook page and Instagram page to market and promote its strip club, and its alleged destroying of copyright applicable to Underlying Plaintiffs' photographs by "altering the original photographs" for use in its advertising, relate directly to Club O's use of "advertising or publicity material" for its business and, therefore, fall squarely within the definition of "Business of The Insured in The Field of Entertainment " in the Field of Entertainment Endorsement.

### 2. Club O's Assertion That The Underlying Complaint Presents a Claim for Defamation Does Not Alter The Fact That The Field of Entertainment Endorsement Unambiguously Operates To Bar Coverage For Such Claims

As discussed above, Club O asserts in the Motion that: "[B]ecause the Underlying Plaintiffs allege reputational harm and other elements sufficient to state a cause of action for defamation, the Underlying Complaint is squarely within the ambit of the damages covered by the [Policies] for 'Personal and Advertising Injury' as therein defined. Based on such First Mercury has a duty to defend on these and all other claims brought within the same cause of action as a result." Motion at p. 8. First Mercury disputes Club O's efforts to re-characterize the claims asserted against it in the Underlying Action. However, even assuming *arguendo* that this Court were to accept Club O's characterization of such claims, doing so would not change the fact that the Field of Entertainment Endorsement contained in each of the Policies unambiguously operates to bar coverage for such claims.

As discussed herein, the Field of Entertainment Endorsement contained in each of the Policies provides that "[t]his insurance does not apply to . . . "personal and advertising injury" . . . actually or allegedly arising out of, related to, caused by or attributed to by *inter alia*, "[i]nvasion of the right to privacy" or "[i]nfringement of copyright, whether under statutory or common law, libel, <u>slander or other forms of defamation</u>," but only as such acts apply to the "Business of The Insured in The Field of Entertainment." *See* ECF No. 9-2 at p. 56 (emphasis

8

supplied). Accordingly, given that the Field of Entertainment Endorsement expressly provides that the Policies do not afford coverage for "personal and advertising injury" actually or allegedly arising out of, related to, caused by or attributed to by "slander or other forms of defamation", it is clear that Club O's attempt in the Motion to recast the claims asserted against in in the Underlying Action as defamation claims does not change the fact that the Field of Entertainment Endorsement contained in each of the Policies unambiguously operates to bar coverage for such claims.

### 3. The Order Entered By The Florida Case Club O Cites To In The Motion is Readily Distinguishable From this Action

In support of its request for summary judgment, Club O places significant emphasis in the Motion on the order entered by the U.S. District Court for the Middle District of Florida denying an insurer summary judgment in an action styled *Aix Specialty Insurance Company, v. Dginguerian*, Case No. 18-24099, 2019 WL 4573255 (U.S. District Ct., S.D. Florida). In fact, citing to such order, Club O asserts in the Motion that "[t]his exact case – the Underlying Claim, the verbatim language of the insurance policy, and the ineffectual argument against a duty to defend – was ruled upon in the U.S. District Court for the Southern District of Florida, though with different parties." Motion at p. 7.

The order issued by the *Aix Specialty* court denying summary judgment to an insurer is not binding authority upon this Court. Moreover, the ruling by that court is readily distinguishable for this action. As an initial matter, the court in *Aix Specialty* addressed a request by an insurer for summary judgment under Florida law. In this case, Club O seeks summary judgment on this issue under Illinois law. More importantly, a review of the order demonstrates that Club O's assertion that the *Aix Specialty* action was "this exact case" and involved "the verbatim language of the insurance policy" is patently false. In fact, the order in that action reflects that the *Aix Specialty* court analysed the applicability of only one policy exclusion (exclusion i. Infringement of Copyright, Patent, Trademark or Trade Secret) out of

9

the **eight** policy exclusions upon which First Mercury relies in seeking a declaration that it owes no coverage obligations to Club O for the claims asserted against it in the Underlying Action. In addition, given the fact that the insurance policy at issue in the *Aix Specialty* action did not include exclusionary language similar to the Field of Entertainment Endorsement contained in each of the Policies (which expressly precludes coverage for "personal and advertising injury" actually or allegedly arising out of, related to, caused by or attributed to by slander or other forms of defamation), underscores that Club O's reliance on the order as support for its assertion that First Mercury has a duty to defend Club O because the claims in the Underlying Action "sound in defamation" is completely unfounded.

### B. The Exclusions for "Knowing Violation of Rights of Another" and "Material Published with Knowledge of Falsity" Apply Based on the Factual Allegations and Nature of the Underlying Claims.

Under Illinois law, whether an insurer has a duty to defend depends on the true nature of the underlying claims and not the label given to characterize the claims. *American Fam. Mut. Ins. Co. v. Roth*, 381 Ill. App. 3d 760, 767-68 (1st Dist. 2008) ("*Roth*"). In its Motion, Club O argues that the exclusions for "Knowing Violation of Rights of Another" and "Material Published with Knowledge of Falsity" do not apply because the Complaint in the Underlying Action asserts a claim for negligence and because it could be held liable for certain causes of action asserted against it without proof of intent. Motion at pp. 8-11. This argument fails for several reasons.

First, despite characterizing one of the claims against Club O as "negligence," the factual allegations, when read as whole, demonstrate that the true nature of the claims asserted in the Underlying Action are premised upon Club O's alleged knowing, intentional, and/or fraudulent misrepresentation that the Underlying Plaintiffs were affiliated with Club O. *See Roth*, 381 Ill. App. 3d at 768 ("the underlying complaint has to be read as a whole in order to assess its true nature, regardless of the label given to characterize its allegations"). The factual

10

allegations do not suggest that Club O somehow negligently violated the Underlying Plaintiffs' rights or that Club O published Underlying Plaintiffs' photos without knowledge that the Underlying Plaintiffs were unaffiliated with Club O. Instead, based on the factual allegations of the Complaint in the Underlying Action, it is apparent that the alleged injuries sustained by the Underlying Plaintiffs resulted from Club O's alleged knowing violations of their rights and alleged publication of their photos with knowledge that they were unaffiliated with Club O. Accordingly, the "Knowing Violation of Rights of Another" and "Material Published with Knowledge of Falsity" exclusion s of the Policies unambiguously operate to bar coverage for such claims.

Specifically, with respect to Exclusion a. Knowing Violation of Rights of Another, the Complaint alleges that "Defendants are well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit." *See* Complaint, ECF No. 9-1 at ¶ 13. The Complaint further alleges that, despite knowing the Underlying Plaintiffs' photos could not be published without their permission, "[Club O] circumvented the typical arms-length negotiation process entirely and intentionally pirated the images." ECF No. 9-1 at ¶ 10; ECF No. 9 at ¶ 17. The Complaint further alleges "[Club O] had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive [Underlying Plaintiff] of a property interest, and acted with actual or constructive knowledge of the high probability that injury or damage would result to [Underlying Plaintiff]." ECF No. 9-1 at ¶¶ 97, 176, 237. These allegations from the Complaint in the Underlying Action clearly seek to impose liability for injury caused by or at the direction of the insured with knowledge that its actions would violate the rights of another and inflict "personal and advertising injury" and, therefore, fall squarely within the scope of Exclusion a.

11

The application of Exclusion b. Material Published with Knowledge of Falsity is equally clear based on the factual allegations in the Complaint. Specifically, the Complaint alleges that "Club O was at all times aware, at no point have Plaintiff Models ever been affiliated with or employed by Club O, and at no point have Plaintiff Models ever endorsed Club O, but that despite such knowledge Club O nevertheless "used, advertised, created, printed, and distributed the Underlying Plaintiffs' image to create the false impression with potential clientele that the Underlying Plaintiffs' worked at or endorsed Club O." ECF No. 9-1 at ¶¶ 46-48; ECF No. 9 at ¶¶ 14-15. The Complaint further alleges that Club O's conduct was "misleading and deceptive by falsely and fraudulently representing that each Plaintiff Model depicted in the misappropriated images is somehow affiliated with [Club O]; has contracted to perform at and/or participate in events at Club O; has been hired to promote, advertise, market or endorse its events and other activities offered at Club O; and/or that each Plaintiff depicted in the promotional materials and social media and/or Internet posts has attended or will attend each event and has participated in or intends to participate in the activities advertised." ECF No. 9 at ¶ 16. Based on these allegations, the Complaint clearly seeks to impose liability for injuries arising out of oral or written publication of material allegedly done by or at the direction of the insured with knowledge of its falsity and, therefore, coverage is precluded by operation of Exclusion b. Material Published with Knowledge of Falsity.

Moreover, Triple Location's reliance on the fact that the claims asserted against it in the Underlying Action do not require "intentional acts" is misplaced, since the exclusions at issue only require knowledge, a lower threshold than intent. The *Roth* case is instructive on this point. In *Roth*, the court held that breach of contract claims against the insured, arising out of the insured's solicitation of customers after termination of agency, were not covered because the policy excluded coverage for injury caused by the insured while knowing that its conduct would violate the right of another. 383 Ill. App. 3d at 766-67. The *Roth* court explained that

the insured knew that the agency agreements barred them from soliciting former customers for one year, and this knowledge was sufficient to show the exclusion barred coverage. *Id.* This was the case even though a breach of contract claim does not require a showing of intent; it was sufficient that the insured's agents had knowledge that their acts violated the rights of others. *Id.*

In this case, the Complaint alleges that "[Club O is] well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit." *See* Complaint, ECF No. 9-1 at ¶ 13. The Complaint further alleges that despite this knowledge, Club O used the Underlying Plaintiffs' photos to advertise Club O without their permission to do so. Thus, like in *Roth*, the claims asserted against Club O arise out of its knowing violation of the rights of the Underlying Plaintiffs and use of their photos with knowledge that the Underlying Plaintiffs' were not affiliated with Club O. Based on the factual allegations stated in the Complaint, and in accordance with Illinois law, Exclusion a. Knowing Violation of Rights of Another and Exclusion b. Material Published with Knowledge of Falsity unambiguously bar coverage for the claims asserted against Club O in the Underlying Action, and Club O's assertion to the contrary in the Motion is without merit.

## C. First Mercury's Request For A Determination Regarding Its Duty to Indemnify Club O is Ripe for Adjudication.

Club O further claims that First Mercury's request for a determination as to its duty to indemnify is premature because the Underlying Action is still pending. While it is generally true that a determination as to an insurer's duty to indemnify is appropriate following a determination of the insured's liability, there is an exception to that general rule where an insurer seeks a declaration that it has no duty to defend or indemnify its insured. *The Cincinnati Ins. Co. v. Berkshire Refrigerated Warehouse, LLC*, 149 F. Supp. 3d 867, 873 (N.D. Ill. 2015). "The duty to defend is broader than the duty to indemnify, and where there is no duty to defend,

a duty to indemnify cannot arise." *Id.* In order to show that an insurer has no duty to defend, the insurer must establish there is no potential that the underlying action will result in liability covered under the policy. *Id.*, citing the Illinois Supreme Court's decision in *Pekin Ins. C. vo. Wilson*, 237 Ill.2d 446 (2010). Thus, if an insurer proves that it has no duty to defend its insured in the underlying action, it has necessarily shown that it has no duty to indemnify, either. *Id.* at 874 ("if the Court concludes that there is no duty to defend, it can immediately address the question of an insurer's duty to indemnify even if the underlying liability of the insured remains unresolved").

Based on the foregoing, courts applying Illinois law have held that a claim seeking a declaration regarding the insurer's duty to indemnify is not premature where, as here, the insurer seeks a determination as to its duty to defend as well. *See id.*; *Crum & Forster Managers Corp. v. Resolution tr. Corp.*, 156 Ill.2d 384, 398 (1993) ("where no duty to defend exists and the facts alleged do not even fall potentially within the insurance coverage, such facts alleged could obviously never actually fall within the scope of coverage"); *Atlantic Cas. Ins. Co. v. Sealtite Roofing & Constr. Co.*, 73 F. Supp. 3d 953, 961 (N.D. Ill. 2014) (finding claim regarding duty to indemnify was not premature even though underlying action was not resolved because insurer "can only prevail on its claim that it has no duty to defend if it proves that there is no *potential* for the duty to indemnify to arise from the underlying lawsuit"). Accordingly, because First Mercury seeks a declaration regarding its duties to defend and indemnify Club O in connection with the Underlying Lawsuit, First Mercury's request for a determination as to its duty to indemnify is ripe for adjudication.

## VI. CONCLUSION

For the reasons set forth herein and in the supporting exhibits and case authority, Defendant Club O's Motion for Summary Judgment should be denied.

Dated November 6, 2020        Respectfully Submitted,

FIRST MERCURY INSURANCE COMPANY

/s/ James J. Hickey
James J. Hickey (Illinois Bar No. 6198334)
james.hickey@kennedyslaw.com
Julie Klein (Illinois Bar No. 6316842)
julie.klein@kennedyslaw.com
KENNEDYS CMK LLP
100 North Riverside Plaza, Suite 2100
Chicago, Illinois 60606
Phone: (312) 800-5000
Fax: (312) 207-2110

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing Plaintiff First Mercury Insurance Company's Response in Opposition to Defendant's Motion For Summary judgment was filed and served via the Court's CM/ECF upon all counsel of record listed below on November 6, 2020:

Marty J. Schwartz
Michelle L. Wesley
Kevin A. Ameriks
Thomas J.K. Schick
Schain, Banks Kenny & Schwartz, Ltd.
70 W. Madison Street, Suite 5300
Chicago, Illinois 60602
Phone: (312) 345-5700
mschwartz@schainbanks.com
mwesley@schainbanks.com
kameriks@schainbanks.com
tschick@schainbanks.com

*Attorneys for Defendant Triple Location, LLC
d/b/a Club O*

                                      s/James J. Hickey
                                      James J. Hickey (Illinois Bar No. 6198334)
                                      James.Hickey@Kennedyslaw.com
                                      Julie Klein (Illinois Bar No. 6316842)
                                      julie.klein@kennedyslaw.com
                                      KENNEDYS CMK LLP
                                      100 North Riverside Plaza, Suite 2100
                                      Chicago, Illinois 60606
                                      Phone: (312) 800-5000
                                      Fax: (312) 207-2110