UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRST MERCURY INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | 19 C 2395 |
| ) | |
| vs. ) | Judge Gary Feinerman |
| ) | |
| TRIPLE LOCATION LLC d/b/a Club O, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

In this coverage suit brought under the diversity jurisdiction, First Mercury Insurance Company seeks a declaration that it does not owe a duty to defend or indemnify its insured, Triple Location LLC d/b/a Club O, in connection with claims asserted in *Sears v. Triple Location, LLC*, No. 18 C 4808 (N.D. Ill.). Doc. 9. First Mercury moves under Rule 12(c) for judgment on the pleadings, Doc. 48, and Triple Location moves under Rule 56 for summary judgment, Doc. 50. Triple Location's summary judgment motion is granted in part as to the duty to defend and denied without prejudice in part as premature as to the duty to indemnify, and First Mercury's motion for judgment on the pleadings is denied.

### Background

Because summary judgment will be granted to Triple Location, the court recites the facts as favorably to First Mercury as the record and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

1

A. **The Underlying Suit**

The plaintiffs in the underlying suit—Emily Sears, Lina Posada, and Lucy Pinder—are professional models who allege that Triple Location published their images without their consent "in order to promote its strip club, Club O." Doc. 50-1 at ¶ 1. The unauthorized publications are alleged to have occurred on three dates in 2015, 2016, and 2018 through postings on Club O's Facebook and Instagram pages. *Id*. at ¶¶ 53, 55, 64, 66, 75, 77. The plaintiffs allege that Club O's postings "create[d] the false impression that [they] ha[d] consented or agreed to promote, advertise, market, and/or endorse Club O," which caused them to "sustain[] injury to their images, brands, and marketability by [their] shear affiliation with … a strip club." *Id*. at ¶¶ 12, 53, 64, 75. The plaintiffs further allege that Triple Location "totally and completely destroyed" any "copyright" that existed in their photos by "morphing, editing, or otherwise altering the original photographs." *Id*. at ¶ 44.

The underlying complaint claims that First Mercury "was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the [i]mage[s] of [the] models that were used on the Club O Website and social media accounts." *Id*. at ¶¶ 148, 218, 288. The complaint claims in the alternative that if such policies were in place, First Mercury "nevertheless negligently failed to enforce those policies, communicate them to employees, and/or [screen, train, and] supervise its employees in order to ensure that these policies, along with [f]ederal and Illinois law, were not violated." *Id*. at ¶¶ 150, 152, 220, 222, 290, 292. And the complaint also claims that the plaintiffs' images were published without their authorization as a proximate result of Triple Location's "negligence." *Id*. at ¶¶ 149, 153, 219, 223, 289, 293.

Based on those allegations, the plaintiffs bring claims under: (1) the Lanham Act, 15 U.S.C. § 1125(a), for false advertising and false endorsement; (2) the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq.*, for violation of their right to publicity and for being

placed in a false light; and (3) state law negligence. *Id*. at ¶¶ 84-293. The plaintiffs seek damages and injunctive relief. *Id*. at ¶ 15. Triple Location tendered its defense of the suit to First Mercury, its liability insurer, which declined to accept the tender on the ground that the plaintiffs' claims are excluded from coverage under Triple Location's policies. Doc. 50 at p. 3, ¶¶ 6-7. First Mercury then filed this suit seeking a declaration that it has no duty to defend or indemnify Triple Location. *Id*. at p. 3, ¶ 8; Doc. 9.

      B.      **The First Mercury Policies**

First Mercury issued Triple Location three insurance policies during the relevant time period. Doc. 50 at p. 3, ¶ 9; Docs. 50-3 (2015 Policy), 50-4 (2016 Policy), 50-5 (2017 Policy). Under each policy, First Mercury has a duty to defend Triple Location against lawsuits seeking damages for "personal and advertising injury." Doc. 50-3 at 15; Doc. 50-4 at 15; Doc. 50-5 at 15. The pertinent coverage provision in all three policies states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. …

*Ibid*.

The policies define "personal and advertising injury" to mean an injury "arising out of one or more of [several enumerated] offenses." Doc. 50-3 at 23; Doc. 50-4 at 23; Doc. 50-5 at 23. Three of the enumerated offenses are arguably pertinent here: (1) "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services"; (2) "[o]ral or written publication, in any manner, of material that violates a person's right of privacy"; and (3) "[i]nfringing upon another's copyright, trade dress or slogan in [the insured's] 'advertisement.'"

3

*Ibid*. The term "advertisement," in turn, "means a notice that is broadcast or published to the general public or specific market segments about [the insured's] goods, products or services for the purpose of attracting customers or supporters." Doc. 50-3 at 21; Doc. 50-4 at 21; Doc. 50-5 at 21.

The policies have several provisions intended to narrow the coverage. Doc. 50 at p. 4, ¶ 13. First Mercury highlights four such provisions. Doc. 53 at 2. Three are labeled as "exclusions," in that they carve out categories of "personal and advertising injury" to which the policies "do[] not apply." Doc. 50-3 at 15-16; Doc. 50-4 at 15-16; Doc. 50-5 at 15-16. Exclusion (a) excludes "personal and advertising injury" that is "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" Doc. 50-3 at 15; Doc. 50-4 at 15; Doc. 50-5 at 15. Exclusion (b) excludes "personal and advertising injury" that "arise[s] out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." *Ibid*. And Exclusion (p) excludes "personal and advertising injury" that "aris[es] directly or indirectly out of any action or omission that violates or is alleged to violate" the Telephone Consumer Protection Act ("TCPA"), the CAN-SPAM Act of 2003, or any other "statute, ordinance[,] or regulation … that prohibits or limits the sending, transmitting, communicating or distribution of material or information." Doc. 50-3 at 16; Doc. 50-4 at 16; Doc. 50-5 at 16.

The fourth provision highlighted by First Mercury is an endorsement titled "Field of Entertainment—Limitation of Coverage." Doc. 50-3 at 54; Doc. 50-4 at 54; Doc. 50-5 at 54. It states in pertinent part:

> This insurance does not apply to … "personal and advertising injury" … actually or allegedly arising out of, related to, caused by or attributed to by any of the following, but only as each applies to the "***Business of The Insured in The Field of Entertainment***."

4

      a. Invasion of the right to privacy;

      b. Infringement of copyright, whether under statutory or common law; libel, slander or other forms of defamation; …

*Ibid*. "Business of The Insured in The Field of Entertainment" is defined to include "[t]he ownership, licensing, operation maintenance or use of merchandising programs, advertising or publicity material or paraphernalia, characters or ideas, whether or not on premises of the insured or in possession of the insured at the time of the alleged offense or 'occurrence[.]'" *Ibid*.

## Discussion

Triple Location seeks summary judgment on First Mercury's request for a declaration that it does not owe a duty to defend or indemnify Triple Location for the claims asserted against it in the underlying suit. Doc. 50 at p. 2, ¶¶ 4-5; *see* Doc. 9 at ¶¶ 33-44. The parties agree that Illinois law applies. Doc. 50 at pp. 5-6; Doc. 53 at 5; *see McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998) ("Because this is a diversity case, we look to state law to provide the substantive law regarding interpretation of the insurance policy."). The Seventh Circuit has summarized Illinois law governing the interpretation of insurance policies as follows:

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011) (citations omitted). Where, as here, an endorsement is attached to the policy, the court must construe the policy "in conjunction with [that] endorsement[] in order to determine the meaning and effect of the

5

insurance contract." *Pekin Ins. Co. v. Recurrent Training Ctr.*, 948 N.E.2d 668, 673 (Ill. App. 2011).

**I.      Duty to Defend**

As noted, the policies provide that First Mercury "will have the right and duty to defend [Triple Location] against any 'suit' seeking … damages" for "'personal and advertising injury' to which this insurance applies." Doc. 50-3 at 15; Doc. 50-4 at 15; Doc. 50-5 at 15. Illinois law construes such duty-to-defend provisions broadly: "An insurer's duty to defend its insured is much broader than its duty to indemnify its insured. An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case within or potentially within the insured's policy coverage." *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005) (citation omitted). In making that determination, Illinois law "give[s] little weight to the legal label that characterizes the underlying allegations. Instead, [the court must] determine whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010) (quoting *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. 2001)).

Triple Location argues that First Mercury owes it a duty to defend because the underlying plaintiffs' claims fall within, or potentially fall within, the policies. Doc. 50 at pp. 5-13; Doc. 58 at 2-9. Resolving this case requires attention only to the negligence claims. According to Triple Location, the plaintiffs assert claims for "personal and advertising injury" arising out of its allegedly negligent conduct, claims for which there is no applicable exclusion. Doc. 50 at pp. 8-9; Doc. 58 at 5. First Mercury responds that the underlying complaint's factual allegations, read as a whole, reveal that the "true nature" of the plaintiffs' claims concern Triple Location's

"alleged knowing, intentional, and/or fraudulent misrepresentation that the [plaintiffs] were affiliated with Club O." Doc. 53 at 10. It follows, First Mercury argues, that the complaint cannot fairly be read to allege negligent acts, and in fact alleges only the sort of knowing or intentional misconduct that Exclusions (a) and (b) except from coverage. *Id*. at 10-11.

Triple Location's view prevails. As noted, the underlying complaint expressly alleges that First Mercury "was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the [i]mage[s] of [the] models that were used on the Club O Website and social media accounts." Doc. 50-1 at ¶¶ 148, 218, 288. The complaint alleges in the alternative that if First Mercury had such policies, it "negligently failed to enforce th[em], communicate them to employees, and/or [screen, train, and] supervise its employees in order to ensure that these policies, along with [f]ederal and Illinois law, were not violated." *Id*. at ¶¶ 150, 152, 220, 222, 290, 292. And the complaint further alleges that Triple Location published the plaintiffs' images without their authorization as a proximate result of its "negligence." *Id*. at ¶¶ 149, 153, 219, 223, 289, 293.

Granted, the underlying complaint *also* alleges intentional acts of misappropriation, *e.g.*, *id*. at ¶¶ 10, 13, 97, 237, and if Triple Location intentionally pirated the plaintiffs' images, it necessarily cannot have done so negligently. But the Federal Rules permit inconsistent pleading, including the simultaneous pleading of negligent and intentional conduct, *see* Fed. R. Civ. P. 8(d)(3) ("A [plaintiff] may state as many separate claims … as it has, regardless of consistency."); *White v. City of Chicago*, 2016 WL 4270152, at *6 (N.D. Ill. Aug. 15, 2016) (holding that Rule 8(d)(3) allows a plaintiff to plead both intentional and negligent misconduct); *Sindles v. Saxon Mortg. Servs., Inc.*, 2012 WL 1899401, at *7 (N.D. Ill. May 22, 2012) (same), and that fact defeats First Mercury's contention that the complaint does not or cannot allege

7

negligent conduct because it also alleges intentional conduct. Accordingly, certain conduct alleged in the complaint—Triple Location's negligence in failing to adopt and/or implement anti-misappropriation policies—"arguably falls within at least one of the categories of wrongdoing listed in the policy," *Lexmark Int'l, Inc.*, 761 N.E.2d at 1221—namely, "personal and advertising injury" arising out of the publication of material that "slanders or libels" a person, "violates a person's right of privacy," or "[i]nfring[es] upon another's copyright," Doc. 50-3 at 23; Doc. 50-4 at 23; Doc. 50-5 at 23.

None of the exclusionary provisions invoked by First Mercury exclude Triple Location's alleged negligent conduct from the policy's coverage for "personal and advertising injury." Illinois law holds that "[i]f the insure[r] relies on an exclusionary provision in denying duty to defend, it must be clear and free from doubt that the policy's exclusion prevents coverage." *Aetna Cas. & Sur. Co. v. O'Rourke Bros., Inc.*, 776 N.E.2d 588, 595 (Ill. App. 2002); *see also Santa's Best Craft, LLC*, 611 F.3d at 347 ("Insurers have the burden of proving that an exclusion applies."). The exclusionary provisions cited by First Mercury do not satisfy that standard.

Exclusion (a) and (b)'s carve-outs for "knowing" conduct, Doc. 50-3 at 15; Doc. 50-4 at 15; Doc. 50-5 at 15, do not apply to the underlying complaint's negligence allegations. This conclusion follows from *Cincinnati Insurance Co. v. Eastern Atlantic Insurance Co.*, 260 F.3d 742, 746-47 (7th Cir. 2001), which considered whether a similar "knowledge of falsity" exclusion defeated the insurer's obligation to defend its insured against a tortious interference claim. The Seventh Circuit reasoned that the insurer owed a duty to defend because a tortious interference claim can be grounded in intentional *or* negligent conduct, and the underlying plaintiff's claim against the insured did not rest solely on allegations of deliberate misconduct. *Id*. at 746. Exclusions (a) and (b) do not defeat coverage here for the same reason. *See Axiom*

8

*Ins. Managers, LLC v. Capitol Specialty Ins. Corp.*, 876 F. Supp. 2d 1005, 1014-15 (N.D. Ill. 2012) (holding that the insurer owed a duty to defend the insured in the underlying suit because the policy exclusions for material "published with knowledge of falsity" and/or in "knowing violation of rights of another" did not implicate a defamation claim predicated on the dissemination of false information without knowledge of its falsity).

The same result obtains for Exclusion (p)'s carve-out for "personal and advertising injury" that "aris[es] directly or indirectly out of any action or omission that violates or is alleged to violate" the TCPA, the CAN-SPAM Act, "or [a]ny [other] statute, ordinance or regulation … that prohibits or limits the sending, transmitting, communicating or distribution of material or information." Doc. 50-3 at 16; Doc. 50-4 at 16; Doc. 50-5 at 16. In none of the briefs it filed in connection with the pending motions does First Mercury explain how Exclusion (p) implicates the underlying complaint's negligence claims. Doc. 49 at pp. 13-14; Doc. 53; Doc. 57 at 13. First Mercury has thereby forfeited any argument it might have made to satisfy its burden under Illinois law to show that the exclusion applies. *See Gates*, 916 F.3d at 641 ("The district court was not required to address a claim or theory that plaintiff did not assert.").

Any such argument would have failed on the merits in any event. Granted, in *G.M. Sign, Inc. v. State Farm Fire & Casualty Co.*, 18 N.E.3d 70 (Ill. App. 2014), the Appellate Court of Illinois interpreted an exclusion materially identical to Exclusion (p) to encompass common law claims arising from the same conduct as a statutory claim brought in the same suit. *See id*. at 76, 78-79 (holding that an analogous exclusion for "Distribution Of Material In Violation Of Statutes" defeated the insurer's duty to defend its insured against a common law conversion claim because that claim arose out of the same facts as a TCPA claim brought in the same suit). But the Appellate Court of Illinois has clarified, again while interpreting an exclusion materially

9

identical to Exclusion (p), that the exclusion's catch-all provision for injuries arising out of "[a]ny statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communication or distribution of material or information" is "meant to bar coverage for the violation of a very limited type of statute." *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, __ N.E.3d __, 2020 IL App (1st) 1330494, at ¶¶ 6, 42 (Ill. App. March 20, 2020). That is, the catch-all provision is "meant to encompass any [s]tate or local statutes, rules, or ordinances that, like the TCPA and the CAN-SPAM Act, regulate [particular] *methods* of communication" such as e-mail and phone calls—as opposed to, more generally, "other statutes that limit the sending or sharing of certain information." *Id*. at ¶ 43.

It follows that Exclusion (p)'s catch-all does not encompass the underlying complaint's Lanham Act and IRPA claims. As First Mercury admits, both statutes "address, prohibit, or limit the dissemination or distribution of material or information" without limit to a particular method of communication. Doc. 49 at p. 14 & n.1. This means that there is no statutory predicate to trigger Exclusion (p), and in turn that the underlying plaintiffs' negligence claims do not fall within the exclusion's scope under the rationale articulated in *G.M. Sign*.

That leaves the "Field of Entertainment" endorsement. As with Exclusion (p), in none of its briefs does First Mercury argue, let alone show, how the endorsement implicates the underlying complaint's negligence claims, Doc. 49 at pp. 8-11; Doc. 53 at 6-10; Doc. 57 at 10-13, thereby forfeiting any argument it might have made. *See Gates*, 916 F.3d at 641. But setting aside forfeiture, and even if it could somehow fit the negligence claims within the endorsement, First Mercury would remain obligated to defend Triple Location.

Under Illinois law, if an insurance "policy contains inconsistent provisions, [the court] must construe the policy in a manner that is most favorable to the insured." *Yates v. Farmers Auto. Ins. Ass'n*, 724 N.E.2d 1042, 1045 (Ill. App. 2000); *accord Barlow v. State Farm Mut. Auto. Ins. Co.*, 127 N.E.3d 754, 760 (Ill. App. 2018); *cf. Colonial Coach Mfg. Corp. v. Home Ins. Co.*, 260 F.2d 532, 533 (7th Cir. 1958) (Indiana law) ("[W]hen a policy of insurance contains contradictory or inconsistent provisions, one favorable to the insurer and the other favorable to the insured, the construction favorable to the insured should prevail."). Moreover, the "familiar rule … that insurance policies are to be construed in favor of the insured … is most rigorously applied in considering the meaning of exclusions incorporated into a policy of insurance." *Sears, Roebuck & Co. v. Reliance Ins. Co.*, 654 F.2d 494, 499 (7th Cir. 1981); *see also 3BC Props., LLC v. State Farm Fire & Cas. Co.*, 156 N.E.3d 626, 628 (Ill. App. 2020) ("We construe any ambiguity in an insurance contract in favor of coverage and must construe exclusions narrowly."). Citing these principles, Triple Location argues that First Mercury's reading of the Field of Entertainment endorsement creates a conflict with the personal and advertising injury coverage provision that must be resolved in favor of coverage. Doc. 58 at 2-5.

Triple Location is correct. Adopting First Mercury's position that the endorsement negates its duty to defend Triple Location in the underlying suit would mean that the policies *cover* "personal and advertising injury" caused by negligence associated with privacy right or copyright infringement in "[the insured's] 'advertisement[s]'" or with "[t]he use of another's advertising idea in [the insured's] 'advertisement[s],'" Doc. 50-3 at 23; Doc. 50-4 at 23; Doc. 50-5 at 23, yet *exclude* the very same injury if it arises out of the insured's "advertising," Doc. 50-3 at 54; Doc. 50-4 at 54; Doc. 50-5 at 54. In other words, the policies would grant coverage for "personal and advertising injury" caused by negligence associated with the insured's

11

"advertisement[s]," but the endorsement would remove such coverage if the injury arose from the insured's engaging in "advertising." Given the stark incompatibility of these dueling provisions, the endorsement creates an ambiguity about the scope of coverage that, at least for purposes of the duty to defend, must be resolved in Triple Location's favor. *See Yates*, 724 N.E.2d at 1045; *Barlow*, 127 N.E.3d at 760. First Mercury therefore cannot show "clear and free from doubt" that the Field of Entertainment endorsement excludes the underlying plaintiffs' negligence claims from coverage. *Aetna Cas. & Sur. Co.*, 776 N.E.2d at 595.

In sum, because conduct alleged in the underlying complaint "arguably falls within at least one of the categories of wrongdoing listed in the polic[ies]" and is not clearly excluded from coverage, First Mercury has a duty to defend Triple Location in the underlying suit. *Lexmark Int'l, Inc.*, 761 N.E.2d at 1221.

**II.     Duty to Indemnify**

Because First Mercury is obligated to defend Triple Location, the court at this juncture cannot grant First Mercury's request for a declaration that it has no duty to indemnify Triple Location. Questions regarding an insurer's duty to indemnify ordinarily "will become ripe only upon completion of the [underlying] litigation, for [their] resolution depends upon an analysis of the type of relief, if any, ultimately obtained in [the underlying] suit." *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1042 (7th Cir. 1992). While this rule does not apply if the insurer shows that it has no duty to defend—which necessarily means that it has no duty to indemnify, *see Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1081 (Ill. 1993) ("[W]here no duty to defend exists and the facts alleged do not even fall *potentially* within the insurance coverage, such facts alleged could obviously never *actually* fall within the scope of coverage. Under no scenario could a duty to indemnify arise.")—that exception does not apply here. Therefore, it would be premature at this juncture to rule, one way

or the other, whether First Mercury will have the duty to indemnify Triple Location if it is found liable in the underlying suit. *See Capitol Indem. Corp. v. Elston Self Serv. Wholesale Groceries, Inc.*, 551 F. Supp. 2d 711, 729-30 (N.D. Ill. 2008) (declining to rule on the insurer's duty to indemnify after holding that it had a duty to defend), *aff'd*, 559 F.3d 616 (7th Cir. 2009).

## Conclusion

The court grants Triple Location's summary judgment motion as to the duty-to-defend portion of First Mercury's declaratory judgment suit, but declines to resolve the duty-to-indemnify portion because it would be premature to do so. Given this disposition, First Mercury's motion for judgment on the pleadings is necessarily denied. The court will enter judgment in favor of Triple Location and against First Mercury as to the duty to defend, and will dismiss without prejudice First Mercury's claim as to the duty to indemnify.

April 29, 2021

United States District Judge